**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEVIN LEE HOERLE,                    CASE NO. 2:21-cv-11605

     *Plaintiff*,                    HON.  LINDA V. PARKER
*v.*                                    DISTRICT JUDGE

COMMISSIONER OF                    HON. PATRICIA T. MORRIS
SOCIAL SECURITY,                    MAGISTRATE JUDGE

     *Defendant.*
_____/

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)</u>

### I.   <u>RECOMMENDATION</u>

Plaintiff challenges the Commissioner of Social Security regarding a final decision denying his claim for Disability Insurance Benefits ("DIB"). The case was referred to the undersigned for review.  (ECF No. 2); *see* 28 U.S.C. § 636(b)(1)(B) (2012); E.D. Mich. LR 72.1(b)(3).  For the reasons below, I recommend **GRANTING** Plaintiff's motion for summary judgment and remanding the case to the administrative level for hearing and determination in front of another ALJ, (ECF No. 11) and **DENYING** the Commissioner's motion (ECF No. 13).

1

## II.   REPORT

### A. Introduction and Procedural History

On January 23, 2017, Plaintiff applied for DIB, alleging disability as of May 3, 2016. (ECF No. 8, PageID.291).  He alleges disability due to depression and back and knee conditions. (*Id*. at PageID.430).

#### 1.  The September 25, 2018 Determination

Following the denial of the claim at the initial level, Plaintiff requested a hearing, held on April 18, 2018 before Administrative Law Judge ("ALJ") Lauren Burnstein (*Id.* at PageID.102).  Plaintiff and a Vocational Expert ("VE") both testified. (*Id*. at PageID.107, 120).  On September 25, 2018, ALJ Bernstein found that Plaintiff was capable of performing his past relevant work as a furniture salesperson.  (*Id*. at PageID.143-152).

#### 2.  The Appeals Council Remand

On December 5, 2019, the Appeals Council vacated the ALJ's determination and remanded the case for further factfinding.  (*Id*. at PageID.157-161).  The Appeals Council identified three errors in the ALJ's determination, first, finding that the ALJ erred by refusing to admit medical evidence on the erroneous basis that the submission was untimely.  (*Id*. at PageID.143, 159).  Second and third, the Appeals Council observed that the ALJ had failed to "evaluate and weigh" the non-examining opinion of psychologist Leonard C. Balunas, Ph.D. and examining psychologist Hugh D. Bray, Ph.D.  (*Id*. at PageID.160).  The Appeals Council ordered the ALJ to (1) admit the previously rejected evidence, (2) obtain additional evidence concerning the claimant's mental and physical

impairments, including "if warranted and available, consultative examination and medical source opinions," (3) [g]ive further consideration to" Plaintiff's Residual Functional Capacity with a "rationale with specific references to the evidence of record," (4) "[a]s appropriate . . . request treating and non-treating sources . . . provide additional evidence and/or further clarification" of the previous opinions and medical source statements, and, (5) obtain additional evidence from a VE. (*Id*. at PageID.160-161). The Appeals Council noted that Plaintiff had "raised a challenge under the Appointments Clause of the Constitution, U.S. Const. Art. II § 2, cl. 2 to the manner in which the [ALJ] was appointed" but that the claim "lack[ed] merit because on July 16, 2018, the Acting Commissioner of Social Security ratified the [ALJ's] appointment and approved it as her own under the Constitution." (*Id*. at PageID.161).

### 3. The June 23, 2020 Determination

At a second hearing on April 24, 2020, Plaintiff and a VE both testified. (*Id*. at PageID.75, 82, 94). On June 23, 2020, ALJ Burnstein found that Plaintiff was not disabled. (*Id*. at PageID.55-68). On May 7, 2021, the Appeals Council declined to review the administrative decision. (*Id*. at PageID.43-45). The Appeals Council again rejected Plaintiff's constitutional challenges to the ALJ's determination. (*Id*. at PageID.44). On July 11, 2021, Plaintiff filed for judicial review of the administrative determination. (ECF No. 1).

### B. Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g) (2012).  The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  "[T]he threshold for such evidentiary sufficiency is not high. . . . It means - and means only - 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Id*. at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means the inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A) (2012).   The Commissioner's regulations provide that disability is determined through the application of a five-step sequential analysis:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).   "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).   The claimant must

provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record."   20 C.F.R.  §§ 404.1545(a)(1), 416.945(a)(1) (2021).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2021)).

### D.  The ALJ's Findings

The ALJ began her analysis by rejecting Plaintiff's Appointments Clause challenge, noting that while she was not constitutionally appointed at the time of the original hearing, "any Appointments clause defect was cured by the [Appeals Council] remand because, on July 16, 2018, the Acting Commissioner of Social Security ratified all Administrative Law Judge appointments and approved them as her own under the Constitution." (*Id*. at PageID.55-56) (citing SSR 19-1p, 2019 WL 1324866 ( March 15, 2019)).

 Then, following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability date of May 3, 2016.  (ECF No. 8, PageID.58).   At step two, the ALJ found the following impairments severe: "osteoarthritis

of the knees, degenerative disc disease, dysfunction of the lumbar region, and obesity." (*Id.*).  She found that the conditions of hypertension, depression, anxiety, and bipolar disorder were non-severe. (*Id.* at PageID.58-60).  At step three, she found that none of the impairments met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (*Id.* at PageID.61).

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:[1]

> [H]e can occasionally climb ramps and stairs.  He can never climb ladders, ropes, and scaffolds.  He can balance, stoop, kneel, crouch, and crawl occasionally.

(*Id.* at PageID.62).

At step four, the ALJ found that Plaintiff could perform his past relevant work as a furniture salesperson.  (*Id.* at PageID.66).  At step five, the ALJ cited the VE's testimony in support of her determination that Plaintiff could also perform a significant number of jobs in the national economy including the exertionally light, unskilled jobs of packer, sorter, and assembler.  (*Id.* PageID.67-68).   The ALJ

---

[1] Under 20 C.F.R. § 404.1567(a-d) *sedentary* work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and exertionally *heavy* work as "involv[ing] lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

concluded that Plaintiff was not disabled between the alleged onset date of May 3, 2016 through the date of the decision.  (*Id*. at PageID.68).

## E.  Administrative Record

### 1.  Medical Evidence

In February 2016, Plaintiff was transported by police to the hospital for a mental health evaluation after being found walking through traffic, "throwing objects around in the street, taking [his] clothes off outside," and exhibiting "disorganized thoughts." (*Id*. at PageID.529-530).   Emergency records note an anxious mood, labile affect, agitation, hyperactivity, hallucinations, and delusions. (*Id*. at PageID.529).   Plaintiff's mother reported Plaintiff's 2013 or 2014 inpatient mental health treatment.  (*Id*. at PageID.530).  Plaintiff reported that he was divorced in October 2015 and that his father had passed away two weeks earlier.  (*Id*. at PageID.533).  His mother reported that Plaintiff had lost his home and incurred debts.  (*Id*. at PageID.531).   She reported that Plaintiff was intermittently irrational.  (*Id*. at PageID.531).   Exam records state that Plaintiff was "attempting to conceal information to account for behavioral changes.  (*Id*. at PageID.531).  He was assigned a GAF of 21-30.[2]  (*Id*. at PageID.532).  He was referred for inpatient psychiatric treatment.  (*Id*.).

---

[2]  A GAF score of 21–30 indicates "behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas." *Diagnostic and Statistical Manual of Mental Disorders–Text Revision* ("DSM-IV-TR"), 34.

May 2016 records by treating physician Rodney H. Poling, D.O. note "very erratic behavior" including the inability to stay in the exam room, "pacing, speaking rapidly [and] quick changes of topic." (*Id*. at PageID.713).   Plaintiff denied nervousness, anxiety, depression, or hallucinations.  (*Id*. at PageID.715).  He exhibited sacrolumbar and cervical spine pain.  (*Id*. at PageID.716).  Dr. Poling diagnosed Plaintiff with bipolar disorder with manic/psychotic features, obesity, and hypertension.  (*Id*.).

In June 2016, Plaintiff sought a cardiac evaluation for fatigue.  (*Id*. at PageID.543). He reported ongoing symptoms of anxiety.  (*Id*. at PageID.545).  He was prescribed Lipitor for hyperlipidemia.  (*Id*. at PageID.549).  An echocardiogram showed unremarkable results.  (*Id*. at PageID.555).  Dr. Poling's August 2016 records note Plaintiff's report of knee pain worsened by walking or running but improved with "heat and light exercise." (*Id*. at PageID.723).  Plaintiff reported that he and his wife were "separated or divorced" and that he was living in his car."  He exhibited "boisterous, run on speech" along with other symptoms of a manic episode. (*Id*. at PageID.724).  Despite his living conditions and the behavior, Plaintiff again denied psychological symptoms.  (*Id*. at PageID.726).  An October 2016 MRI of the right knee showed moderate joint effusion and a possible meniscal tear.  (*Id*. at PageID.560, 738).  The following month, Dr. Poling found that Plaintiff's ability to stand was limited by the knee condition.  (*Id*. at PageID.735).

January 2017 records note ongoing level "eight" out of "ten" right knee and lumbar spine pain despite physical therapy, home exercise and the use of NSADs.  (*Id*. at

PageID.561).   In March 2017, Plaintiff received the second of two right knee steroid injections for ongoing "seven" out of "ten" pain.  (*Id*. at PageID.580, 584).

In April 2017, psychiatrist Arvind Bhasker conducted a psychiatric examination, noting Plaintiff's history of anxiety and depression.  (*Id*. at PageID.593).  Plaintiff reported that stress and anxiety had become "progressively worse[]" in the past few months.  (*Id*. at PageID.593).  He reported that he quit his job as a furniture salesperson and worked part time as a hockey referee.  (*Id*.).  He reported going to the gym, playing golf, and having plans to "get back to playing hockey competitively." (*Id*.).  He denied current anxiety but reported overeating.  (*Id*.).  Plaintiff made reference to a mid-2016 mental evaluation resulting in him being "pulled out of work," but that it was during a time of "multiple psychosocial stressors." He reported taking Ambien for sleep disturbances.  (*Id*.).  He reported that his mother experienced depression and that his son was autistic.  (*Id*.).  He appeared fully oriented with good memory and an unremarkable mood and affect.  (*Id*. at PageID.594).  He was referred for therapy to improve symptoms of anxiety and depression. (*Id*. at PageID.599).

In May 2017, Jai Prasad, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report that he had gained 50 pounds in the past year. (*Id*. at PageID.607).  Plaintiff reported knee pain from a torn meniscus, stiffness, and back pain (*Id*. at PageID.607-608).  Dr. Prasad observed a normal gait and the ability to "grasp, pinch, and hold" without difficulty, noting the "main physical problem is lower back pain,

with no radiation to the legs." (*Id*. at PageID.608).  Dr. Prasad recommended a psychiatric consult for the conditions of depression and anxiety.  (*Id*.).

The same month, Hugh D. Bray, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report that his doctor had "pulled [him] back from work." (*Id*. at PageID.615).  Contrary to the February 2016 hospital records, he denied a history of psychiatric hospitalization.  (*Id*. at PageID.617).  Dr. Bray observed "slowed" motor activity.  (*Id*. at PageID.617).  Plaintiff exhibited a depressed mood but normal thought content and concentration.  (*Id*. at PageID.618-619).  Dr. Bray gave Plaintiff a "fair" prognosis, opining that he "needs to be in mental health treatment" and continue the use of prescribed psychotropic medications." (*Id*. at PageID.619).  He found "mild to moderate limitation in maintaining concentration, persistence, or pace and moderate limitation in the "ability to withstand stress and pressure associated with day-to-day work activities." (*Id*.).

In May 2017, psychiatrist Leonard C. Balunas performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff experienced moderate limitation in the ability to understand, remember, or apply information; interact with others; maintain concentration, persistence, or pace; and adapt or manage himself.  (*Id*. at PageID.130-131).   Medication review records from the same month note Plaintiff's report of good results from Trintellix.  (*Id*. at PageID.591). He exhibited an appropriate mood and affect. (*Id*.).   Symptoms of depression and anxiety were

deemed stable.  (*Id*.).  He was advised to continue taking Trintellix and attend therapy sessions.  (*Id*.).

The same month, Thomas Chiambretti, D.O. performed a non-examining review of the treating and consultative records relating to Plaintiff's physical condition, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation.  (*Id*. at PageID.132-133).   Dr. Chiambretti found the ability to climb stairs and ramps, stoop, kneel, crouch, and crawl occasionally; the ability to balance, frequently; and a preclusion on the use of ladders, ropes, and scaffolds.  (*Id*. at PageID.133).  He found that Plaintiff should avoid all exposure to hazards such as machinery and heights. (*Id*. at PageID.134).

Therapy records from the same month state that Plaintiff "continued to manage feelings of depression with medications and spiritual growth." (*Id*. at PageID.667).  The following month, he reported oversleeping due to depression.  (*Id*. at PageID.673).

June 2017 orthopedic records note Plaintiff's report of intermittent, low grade knee pain.  (*Id*. at PageID.730).  He reported good results from steroid injections.  (*Id*.).  An August 2017 medication review noted that the conditions of depression and anxiety were stable but that the continued use of Trintellix was advised.  (*Id*. at PageID.749).  He did not exhibit abnormalities in judgment, insight, or memory.  (*Id*.).  Psychological treating records from the following week note Plaintiff's report that he continued to experience depression and anxiety.  (*Id*. at PageID.752).  September records note that Plaintiff was "anxious" and cooperative." (*Id*. at PageID.766).  October 2017 records note that the

medication side effect of tiredness. (*Id*. at PageID.759). Plaintiff reported anxiety when required to make decisions. (*Id*. at PageID.760). Dr. Poling's November 2017 records note a diagnosis of bipolar disorder, "current episode manic severe with psychotic features and psychophysiological insomnia." (*Id*. at PageID.803).

A January 2018 medication review noted that the conditions of anxiety and depression were stable. (*Id*. at PageID.781). Plaintiff was advised to continue the use of Trintellix. (*Id*.). Psychological treating records note Plaintiff's report of progress with the use of medication and mental health services. (*Id*. at PageID.783). The following month Arvind Bhasker, D.O. opined that due to "depressed mood, feelings of fatigue, variable appetite, anxiety, poor sleep, and low motivation, Plaintiff would "likely not be able to keep up with the standards of physical or mental work." (*Id*. at PageID.823).

August and October 2019 records by Dr. Poling again note the diagnosis of bipolar disorder with psychotic features. (*Id*. at PageID.825, 835).

### 2. Plaintiff's Testimony at the Administrative Hearings

Plaintiff offered the following testimony at the April 24, 2018 hearing. He lived in a ground floor apartment. (*Id*. at PageID.107-108). He had a cat. (*Id*. at PageID.108). He was living off his savings and qualified for Medicaid. (*Id*. at PageID.108). He stopped working due to knee and back problems. (*Id*. at PageID.109). Prior to the alleged onset of disability, he was hospitalized for psychiatric problems in December 2013 and was able to go back to work in December 2014. (*Id*. at PageID.109). Following an overnight mental hospital stay, he was given a psychiatric evaluation through his employer leading to his

termination.  (*Id*. at PageID.109).  He went back to work on a part-time basis in October 2016 to February 2017.  (*Id*. at PageID.110).  His former job required him to lift up to 50 pounds.  (*Id*. at PageID.110).  He had held the same job since 1985.  (*Id*.).

Plaintiff was being treating for anxiety and depression.  (*Id*. at PageID.111).  The anxiety made him "feel frozen." (*Id*.).  He also experienced physical limitations due to back and knee problems and was unable to sit or stand for more than 20 minutes or walk for more than one block.  (*Id*.).  He was unable to lift more than 20 pounds.  (*Id*.).  He had not performed his previous part-time work as a hockey referee for the past two years due to back and knee pain.  (*Id*. at PageID.112).  He went to the gym to use the sauna and heat therapy but was unable to use the equipment.  (*Id*.).  He was able to perform light household chores.  (*Id*.).  He experienced the medication side effects of weight gain.  (*Id*.).  He was able to grocery shop twice a week for 30 minutes, care for his own needs, drive, and do laundry.  (*Id*. at PageID.112-113).  He experienced sleep disturbances.  (*Id*. at PageID.113).  He seldom used alcohol and did not use tobacco or illicit drugs.  (*Id*. at PageID.113-114).  Due to the nighttime sleep disturbances, he usually reclined for "a few hours in the afternoon." (*Id*. at PageID.115).  He experienced anxiety attacks once or twice a week lasting for up to two hours.  (*Id*. at PageID.116).  He coped with the attacks by sleeping.  (*Id*.).  His social outings were limited to going to church on Sunday with his mother.  (*Id*. at PageID.118).  He took Trintellix for anxiety and depression; Naproxen for body pain; and Ambien for interrupted sleep.  (*Id*. at PageID.118-119).

Plaintiff offered the following testimony at the April 21, 2020 hearing.  He was 56. (*Id*. at PageID.82).  He had not applied for work since the last hearing and survived on his "dwindling" savings and Medicaid.  (*Id*. at PageID.83).  His level of anxiety had increased in the past two years.  (*Id*. at PageID.84).  He was prescribed psychotropic medication by his treating physician, Dr. Poling.  (*Id*. at PageID.85).  He had not received mental health treatment in the past two years and was "waiting . . . for another psychiatrist." (*Id*.).  He currently took Ambien and Naproxen.  (*Id.* at PageID.86).  He experienced fragmented sleep and napped between 30 and 60 minutes each day.  (*Id*. at PageID.87).

Plaintiff's physical condition had also worsened.  (*Id*.).  He experienced increased knee and back pain and was unable to sit for more than 30 minutes, stand for 20, or walk for more than half a block.  (*Id*. at PageID.86).  He was unable to lift or carry more than 10 pounds.  (*Id*. at PageID.87).  He was able to grocery shop once a week for 20 minutes, care for his personal needs, prepare simple meals, and drive.  (*Id*. at PageID.88).  He experienced daytime grogginess. (*Id*. at PageID.89).

In response to questioning by his attorney, Plaintiff reported that cold, damp weather aggravated the arthritis of the lower back.  (*Id*. at PageID.90).  He coped with pain by the use of pain medication, hot showers, and rest.  (*Id*. at PageID.90).  He had stopped taking psychotropic medication at the recommendation of a primary care doctor.  (*Id*. at PageID.91).  He experienced "bad" days due to depression or medication side effects once or twice a month.  (*Id*.).  Before the furniture salesman position was terminated, he was subject to disciplinary actions and was required to take a "six-hour psychiatric evaluation"

after which his employment was terminated. (*Id*. at PageID.92). He reported that before ceasing work, he had difficulty interacting with others and fell asleep "a number of times on the job." (*Id*.). He had been banned from the property where his mother resided and from interacting with his former wife and son due to "odd behavior." (*Id*. at PageID.92-93). He had an "incident with police" while he was cleaning out his mother's car, and at another time had been picked up by the police and taken to the hospital for "wandering around" and becoming "confused" following a funeral. (*Id*. at PageID.93).

### 3. The VE's Testimony

At the April 21, 2020 hearing, the ALJ posed the following set of modifiers to the VE, describing a hypothetical individual of Plaintiff's age, education, and work history:

> [A]ssume the Claimant is limited to light work; can climb ramps and stairs occasionally; can never climb ladders, roofs, and scaffolds; can balance, stoop, kneel, crouch, and crawl occasionally. Can this individual perform any of Claimant's past work?

(*Id*. at PageID.95). The VE stated that the above limitations would allow for work as a furniture salesman as the job was generally performed in the national economy as well as the exertionally light, unskilled work of a packer, *Dictionary of Occupational Titles* ("DOT") code 559.687-074 (100,000 positions in the national economy); sorter 788-687-106 (100,000); and assembler, 729.687-010 (200,000). (*Id*. at PageID.95). The VE stated that if the above-described individual was unable to stand or walk for only 10 to 15 minutes at a time, the job of furniture salesperson would be eliminated and the above-cited job numbers for other work would be reduced by 50 percent. (*Id*. at PageID.95-96). She stated

that if the individual described in the second hypothetical question were limited to "simple routine tasks, no fast paced production work, no tandem tasks, no occasional interaction with the public and coworkers," the job numbers would remain the same.  (*Id*. at PageID.96).   The VE stated that a limitation to sedentary work would preclude Plaintiff's past relevant work.  (*Id*. at PageID.97).

In response to questioning by Plaintiff's counsel, the VE testified that if the individual needed to be redirected every hour, was off task for at least 20 percent of the workday, or required three to four absences a month, all competitive employment would be eliminated.  (*Id*. at PageID.98).  She stated that her testimony regarding the need to change positions, being off task, absences, and production pace work was based on her own experience rather than the information found in the DOT.  (*Id*. at PageID.99).

### F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B) (2012).   The regulations carve the evidence into categories: "acceptable medical sources" and "other sources."  20 C.F.R. §§ 404.1513, 416.913 (2016).  "Acceptable medical sources" include, among others, licensed physicians

and licensed or certified psychologists.  §§ 404.1513(a), 416.913(a). (2016).[3]  "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence.  §§ 404.1513(d), 416.913(d). (2016).  Only "acceptable medical sources" can establish the existence of an impairment.  SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value.  §§ 404.1527, 416.927 (2016).  Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the

---

[3]  Various amendments have been made to the regulations since Plaintiff filed his claim on January 30, 2017.  *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017).  I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period.  *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same)); *Miller v. Comm'r of Soc. Sec.*, No. 1:17-cv-0718, 2018 WL 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

statutory definition of disability and how to measure his or her RFC.  §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources.  §§ 404.1527(c), 416.927(c).  The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* §§ 404.1527(c), 416.927(c).  ALJs must also apply those factors to "other source" opinions.  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from his treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record."  §§ 404.1527(c)(2), 416.927(c)(2); *see also Wilson*, 378 F.3d at 544.  The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments.  *Id*.  The ALJ does not owe a treating opinion deference on matters reserved to the Commissioner.  20 C.F.R. § 404.1527(d), 416.927(d).  Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a

listing, the individual's residual functional capacity, and the application of vocational factors.  §§ 404.1527(d)(3), 416.927(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination.  §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion.  *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence.  *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

 "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" §§ 404.1529(a), 416.929(a).

But the SSA clarified, "however, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and

persistence about your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." *Id.*

Further, "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." *Id.* The SSA clarified that it will "then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms." *Id.* §§ 404.1529(c)(3), 416.929(c)(3). This other information may include "[t]he information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living)," which "is also an important indicator of the intensity and persistence of your symptoms." *Id.*

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or

nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . .  We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]" *Id.*  The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

   (i)   [D]aily activities;

   (ii)   The location, duration, frequency, and intensity of . . . pain;

   (iii)   Precipitating and aggravating factors;

   (iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

   (v)   Treatment, other than medication, . . . received for relief of . . . pain;

   (vi)   Any measures . . . used to relieve . . . pain.

*Id.*

   The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work."   *Id.* §§ 404.1530(a), 416.930(a).   Stated differently, "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." *Id.* §§ 404.1530(b), 416.930(b).  Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)     The specific medical treatment is contrary to the established teaching and tenets of your religion;

(2)     The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)     Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)     The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)     The treatment involves amputation of an extremity, or major part of an extremity.

*Id.* §§ 404.1530(c), 416.930(c).

## G.  Arguments and Analysis

Plaintiff makes three arguments in favor of remand, contending first that the ALJ failed to defer to Dr. Poling's treating opinion.  (ECF No. 11, PageID.883).  He argues second that the ALJ erred by declining to include any reference to psychological limitation in the RFC.  (*Id*. at PageID.891).   Third, he contends that because ALJ Burstein was unconstitutionally appointed at the time she conducted the first hearing, the Commissioner erred by remanding the case to her for a second hearing and determination.  (*Id*. at PageID.896) (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018)).

In turn, the Commissioner argues that the ALJ properly rejected Dr. Poling's opinion that Plaintiff was limited to working six hours a day due to knee problems.  (ECF No. 13, PageID.905).   The Commissioner argues that substantial evidence supports the

ALJ's finding that the psychological limitations were exclusively mild and the lack of reference to psychological limitation in the RFC, contending that Plaintiff "experienced a brief but intense exacerbation of psychiatric symptoms" from February to August 2016 but that the subsequent records support the finding that the psychological limitations were henceforth non-severe. (*Id*. at PageID.912-13). The Commissioner argues that the ALJ "expressly considered" the "mild" psychological limitations. (*Id*. at PageID.217). The Commissioner disputes Plaintiff's contention that ALJ Burnstein was not qualified to conduct the second hearing and determination, noting that ALJ Burnstein's appointment was ratified prior to both the most recent hearing and determination. (*Id*. at PageID.923).

### 1. Dr. Poling's Opinion

Plaintiff's argument that Dr. Poling's opinion of physical limitation was improperly rejected is based on the following evidence: In November 2016, Dr. Poling opined that due to the abnormal right knee studies, Plaintiff was limited in the number of "work stand hours." (*Id*. at PageID.698). The same month, Dr. Poling found that Plaintiff was unable to work more six hours a day "or as directed by orthopedic specialist." (ECF No. 8, PageID.704).

The ALJ rejected Dr. Poling's November 2016 as "vague," noting that Dr. Poling did not include an assessment of Plaintiff's ability to sit, stand, or walk. (*Id*. at PageID.65). She noted further that the "six-hour limitation" was "essentially a finding of disability" which was an issue reserved for the Commissioner. (*Id*.) (*see* §§ 404.1527(d), 416.927(d). She cited additional treating records showing a normal gait. (*Id*. at PageID.64). She found

that Plaintiff's ability to live independently, shop, and attend appointments, including other activities, supported the RFC for light work. (*Id.*). She cited Dr. Prasad's finding that Plaintiff could perform light work, noting that the consultative examiner had "disability program knowledge." (*Id.*). She gave Dr. Chiambretti's non-examining opinion that Plaintiff could perform a range of light work subject to postural limitations "significant weight." (*Id.* at PageID.65).

Having provided good reasons for rejecting Dr. Poling's opinion, the ALJ did not err by instead adopting in majority part the opinions of two non-treating sources. Pursuant to the law in effect at the time Plaintiff filed his application for benefits, "a non-examining source's opinion is [generally] given less deference than an examining source's opinion, which is given less deference than a treating source." *Brooks v. Comm'r of Social Sec.,* 531 Fed.App'x. 636, 641 (6th Cir. 2013) (citing *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x. 433, 439 (6th Cir. 2012)). Under the general rule, Dr. Poling's treating findings would generally be entitled to more weight than the one-time examining and non-examining sources. However, the ALJ accurately noted that Dr. Poling's statement that Plaintiff was unable to work eight hours a day (akin to a statement of disability) was an issue reserved to the Commissioner and accordingly not entitled to any weight, much less the deference accorded to a treating source opinion. *See* §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). In this instance, the ALJ did not err in instead adopting the non-treating findings as to Plaintiff's physical condition.

"'In appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.'" *Brooks* at 642, (*citing* SSR 96–6p, 1996 WL 374180, at *3 (1996)). Under §§ 404.1527(e)(2)(I), 416.927(e)(2)(I), findings by non-examining state agency consultants may be entitled to significant weight on the basis that they are "highly qualified ... experts in Social Security disability evaluation."

While the treating records contain support for a greater degree of limitation than that found in the RFC, substantial evidence supports the finding that Plaintiff could perform a significant range of unskilled, light work.[4]

## 2.   The Psychological Limitations

The ALJ's step five finding that Plaintiff could do a significant range of unskilled, light work does not support a finding of non-disability as of Plaintiff's September 3, 2018 55th birthday.   The "grids" direct a finding of disability for an individual 55 to 60 (advanced age) who is unable to perform his previous work, does not possess transferrable skills from his previous work,[5] and is limited to exertionally light or sedentary, unskilled work.   20 C.F.R. part 404, subpart P, App. 2, § 202.06.   But as discussed above, the ALJ

---

[4] As discussed further below, the ALJ's alternative, step five finding that Plaintiff could perform a range of unskilled, exertionally light work supports the finding that he was not disabled prior to his September 3, 2018 55th birthday.  (ECF No. 8, PageID.67).  Under the "grids," a finding that an individual "close approaching advanced age" (50 to 55) can perform light work directs a finding of non-disability. 20 C.F.R. Part 404 Subpart P, Appendix 2, § 202.14.  In contrast, a finding that he was limited to sedentary, unskilled work would direct a finding of disability.  § 201.04.

[5] The VE testified at the hearing that Plaintiff's previous job as a furniture salesperson did not have skills transferrable to another job.  (ECF No. 8, PageID.96).

also found at step four that Plaintiff could perform his past relevant work semiskilled work as a furniture salesman.  (ECF No. 8, PageID.66).  The finding that Plaintiff was capable of performing his past relevant work would render Rule 202.06 inapplicable.

However, the step four finding that Plaintiff could return to his job as a furniture salesperson is predicated upon the ALJ's finding that he did not experience a significant, *i.e.* severe, psychological impairment.  The VE testified that if the hypothetical individual were limited to "simple routine tasks, no fast-paced production work, no tandem tasks, and [only] occasional interaction with the public and coworkers" (in other words, some degree of significant, psychologically based limitation) the former work as a furniture salesperson would be precluded.  (ECF No. 8, PageID.96).  The ALJ's step four finding therefore stands on her determination that Plaintiff did not experience any significant degree of psychological work-related limitation on or after his 55th birthday.

"In the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)(*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*quoting Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985)). 20 C.F.R. §§ 404.1522(a) and 416.922(a) define a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." *See also* SSR 85-28, 1985 WL 56856, at*3 (1985) ("Basic work activities" includes the capacity for "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-

workers and usual work situations;" and, "[d]ealing with changes in a routine work setting"). *Id.*

The Social Security regulations adjudge a claimant's mental functioning on a five-point scale. 20 C.F.R. Pt. 404, Subpt. P, App'x.,1 12.00F(2).

a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

*Id.* at § 12.00(F)(2)(a)-(e). Moderate psychological limitations reflect more than *de minimis* work-related limitation. *Jeter v. Comm'r of Soc. Sec.*, No. CIV.A. 12-10591, 2013 WL 1281880, at *6 n 5 (E.D. Mich. Feb. 6, 2013), *report and recommendation adopted,* No. 12-10591, 2013 WL 1278506 (E.D. Mich. Mar. 27, 2013) (citing *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.); §§ 404.1520a(3)(4), 416.920a(3)(4) (moderate deficiencies [as opposed to *mild* deficiencies] generally denote some level of work-related limitation).

The ALJ declined to find that Plaintiff's diagnosed conditions of depression, bipolar disorder, or anxiety were "severe." (ECF No. 8, PageID.60).  She found no limitation in understanding, remembering, or applying information.  (*Id*.).  She found mild (non-severe) limitations in interacting with others; concentration, persistence, and pace; and adapting or managing himself.  (*Id*. at PageID.60).  In support of these findings, she cited Plaintiff's March 2017 report that he could prepare simple meals, pay bills, keep appointments, shop in stores, drive, and play golf.  (*Id*.).  She noted that his personal hygiene was noted to be adequate.  (*Id*.).  She cited certain mental health records created during the relevant period showing an unremarkable mood and affect.  (*Id*. at PageID.59).

The ALJ's summation of Plaintiff's activities is not inaccurate *per se*, but does not appear to take into account his report that he either performed them slowly, with difficulty, or on only an occasional or rare basis.  (*Id*. at PageID.88, 113).  Despite the use of Ambien, Plaintiff continued to experience sleep disturbances and napped anywhere between 30 minutes to "a few hours" every day.  (*Id*. at PageID.87, 115).  Before being removed from his former job, he had been sent home for falling asleep at work.  (*Id*. at PageID.92).  He reported during the 2018 hearing that he had not played golf in two years and that he had gained 50 pounds while taking psychotropic medication.  (*Id*. at PageID.112).  He stayed in bed two days a week due to anxiety.  (*Id*. at PageID.116).  He experienced full-blown anxiety attacks once or twice a week.  (*Id*. at PageID.116).  His social interaction was limited to going to church with his mother on Sundays.  (*Id*. at PageID.118).  It is well

settled that a claimant's ability to perform activities of daily living on an occasional or intermittent basis does not establish non-disability, and by extension here, the absence of all significant psychological limitation. "While the ALJ cited [the claimant's] ability to talk to her friends, take care of the family pets, drive, and perform household chores . . . her ability to perform these activities for short periods followed by a break does not establish that she is capable of full-time employment." *Parks v. Comm'r of Soc. Sec.*, 201 Soc. Sec. Rep. Serv. 694, 201 Soc. Sec. Rep. Serv. 200, 2014 WL 1305033, at *10 (E.D. Mich. Mar. 31, 2014) (quoting *Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967) ("[C]laimant's ability to drive, grocery shop, wash dishes and sweep floor on an intermittent basis does not establish the 'ability to engage in substantial gainful activity.'").

The ALJ's highly selective account of the daily activities could be excused if the finding that Plaintiff did not experience more than mild psychological limitation been supported by even one treating, consultative, or non-examining opinion. While consultative source Dr. Bray found "mild to moderate" concentrational limitation and moderate limitation in "the ability withstand stress and pressure" related to full-time work (ECF No. 8, PageID.619), the ALJ rejected the finding of moderate limitation (but accepted his finding of mild limitation in understanding, remembering, and applying information, and interacting with others) on the basis that "[s]ince the summer of 2016," Plaintiff's psychological symptoms had been stable." (*Id*. at PageID.66). Contrary to this finding, August 2016 through February 2018 records reflect greater than *de minimis* levels of psychological limitation: August 2016, Plaintiff reported that he was living in his car (*Id*.

30

at PageID.723); April 2017, referred for psychiatric treatment. (*Id*. at PageID.599). August 2017, advised to continue psychotropic medication despite stable symptoms and reports of continued depression and anxiety (*Id*. at PageID.749, 752); September 2017, treating observations of anxiety (*Id*. at PageID.766); November 2017, ongoing symptoms of bipolar disorder; January 2018, advised to continue use of psychotropic medication (*Id*. at PageID.781); February 2018, treating opinion that Plaintiff lacked the psychological ability to work. (*Id*. at PageID.823); and August and October 2018, urged by Dr. Poling to restart counseling to combat symptoms of stress. (*Id*. at PageID.835, 842).

The ALJ similarly accorded "little weight" to Dr. Balunas' non-examining finding that Plaintiff experienced in moderate (significant) limitation in the ability to understand, remember, or apply information; interact with others; maintain concentration, persistence, or pace; and adapt or manage himself on the basis that he "did not examine" Plaintiff or listen to his hearing testimony.[6] (*Id*. at PageID. 66, 130-131). In February 2018, treating psychiatrist Dr. Bhasker opined that due to "depression, fatigue, anxiety, poor sleep, and low motivation," Plaintiff would be unable "to keep up with the standards of physical or mental work" and recommended that until symptoms of depression improved, Plaintiff should be precluded "from doing physical or manual labor." (*Id*. at PageID.823). The ALJ also accorded Dr. Bhasker's treating opinion "little weight," finding that Dr. Bhasker's

---

[6] Notably in contrast, the ALJ accorded "significant weight" to Dr. Chiambretti's non-examining review of the physical conditions the very same month, based on his "disability program knowledge." (ECF No. 8, PageID.65).
 But Dr. Balanus was similarly qualified to assess Plaintiff's condition.

statement regarding the standards for physical or mental work were "vague" and dismissing the recommendation to avoid "physical or manual labor" as "beyond the scope" of Dr. Bhasker's expertise.   (*Id*. at PageID.65-66).   While she also rejected the treating psychiatrist's opinion on the basis of an unremarkable medication review, his opinion is consistent with records from the most recent therapy session showing that Plaintiff continued to combat the conditions of depression and anxiety.  (*Id*. at PageID.784).  While the ALJ again cited Plaintiff's activities in discounting Dr. Bhasker's opinion, (*Id*. at PageID.65-66), as discussed above, the record shows that Plaintiff's daily activities were compromised by sleep disturbances, anxiety attacks, and the need to recline for significant periods on a daily basis.  In short, although the treating, consultative, and non-examining sources all found significant, *e.g.* moderate psychological limitation, the ALJ rejected all of these opinions in favor of a selective, non-contextual account of Plaintiff's "daily activities" and the treating records.

Finally, the ALJ's finding that Plaintiff's symptoms had remained "stable" despite his lack of mental health treatment since January 2018 is problematic for multiple reasons. (*Id*. at PageID.66).  To be sure, where a claimant has the resources to obtain treatment, "[the] failure to seek treatment greatly erodes" the claims of limitation.  *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543, 2014 WL 3843791 (6th Cir. 2014) (citing *Blacha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 231 (6th Cir.1990).   On   the other hand, Plaintiff testified at the time of the second hearing that he was living on his dwindling savings, relied on Medicaid for health care and had been "waiting" to be

assigned a psychiatrist.   (ECF No. 8, PageID.85).   Before finding "an individual's symptoms inconsistent with the evidence," the administrative factfinder must consider "possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).   The ALJ "may need to contact the individual regarding the lack of treatment," and if applicable take into account that the claimant "may not be able to afford treatment and may not have access to free or low-cost medical services."[7] *Id.* at *10.  Dr. Poling's August and October 2018 recommendations that Plaintiff restart counseling services also underscores that Plaintiff experienced ongoing psychological limitation despite the lack of consistent mental health treatment.  (*Id*. at PageID.835, 842).

In summary, the ALJ did not err in finding that Plaintiff's psychological condition improved following his February 2016 mental breakdown.  However, the fact that Plaintiff was no longer walking through traffic, taking his clothes off in public, and hallucinating does not imply that he did not experience any continuing, significant degree of limitation. Because the ALJ's opinion that Plaintiff did not experience any significant degree of ongoing, work-related psychological limitation is overwhelmingly contradicted by the treating, consultative, and non-examining opinion evidence and generally undermined by the treating records, a remand for further determination is warranted.

---

[7] Dr. Poling's August 2019 records stating that he helped Plaintiff find a "less expensive" dentist to address "toxic teeth issues" also show that Plaintiff's medical care was compromised by his financial constraints.

### 3.   *Lucia v. S.E.C.*

Plaintiff notes that at the time ALJ Burnstein took testimony at the original, April 18, 2018 hearing, her previous commission was not constitutional, as determined by *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018).  (ECF No. 11, PageID.895).  Following the Appeals Council's identification of substantive errors in the original administrative determination, Plaintiff contends that the Council erred by remanding the case to ALJ Burnstein, arguing that her newer adjudication would be influenced by her original review of the case notwithstanding the July 16, 2018 ratification of her original commission.  (*Id.*).  He argues that ALJ Burnstein's earlier determination that he was not disabled tainted her June 23, 2020 findings and asks for a remand for hearing and determination by a different ALJ.

The Commissioner argues that the April 2020 hearing and June 2020 determination were commenced long after ALJ Burnstein's July 16, 2018 ratification and that the newer determination is the only one currently under review.   (ECF No. 13, PageID.924) (citing *Camille B. v. Kijakazi*, No. 2:20-cv-262, 2021 WL 4205341, at *2-3 (E.D. Va. Sept. 15, 2021; *Govachini v. Comm'r of Soc. Sec.*, No. 19-1433, 2020 WL 5653339, at *1 n.1 (W.D. Pa. Sept. 23, 2020)).   The Commissioner contends that accordingly, a remand to a different ALJ is not warranted.  (*Id.*)

In June 2018, the Supreme Court issued its decision in *Lucia,* holding that the appointment of Securities and Exchange Commission ("SEC") ALJs by lower level staff violated the Constitution's Appointments Clause.  In response, on July 16, 2018, SSA's Acting Commissioner ratified the appointments of all the Administration's ALJs.  The

Acting Commissioner also issued SSR 19-1p, allowing Appointments Clause challenges to be made to the Appeals Council for the review of adjudications made before July 16, 2018.  See SSR 19-1P, 2019 WL 1324866, at *2 (Mar. 15, 2019).  On April 22, 2021, the Supreme Court, reviewing *Lucia,* held that Social Security claimants did not forfeit Appointments Clause challenges by failing to first make them to the ALJs at the administrative level.  *Carr, et al. v. Saul*, 141 S.Ct. 1352 (2021).[8]

In a similar case to this one, the plaintiff in *Welch v. Comm'r of Soc. Sec.*, No. 2:20-CV-1795, 2021 WL 1884062, at *5 (S.D. Ohio May 11, 2021), *report and recommendation adopted,* No. 2:20-CV-1795, 2021 WL 2142805 (S.D. Ohio May 26, 2021), challenged his post-*Lucia* remand to the same ALJ who had held a hearing and issued a non-disability determination prior to his July, 2018 ratification.  *Id.* at *1.  The Court rejected the Commissioner's argument that a post-ratification hearing and determination by the same ALJ cured the Appointments Clause error:

> [T]he Court cannot deny [the] reality [of] "ALJ Hartranft's involvement in Plaintiff's claim before 2019 . . . . Because ALJ Hartranft initially heard and ruled on Plaintiff's claim, he could not then un-ring that bell and "be expected to consider the matter as though he had not adjudicated it before." *Lucia*, 138 S.Ct. at 2055. In such circumstances, *Lucia* and SSR 19-1p confirm that "the appropriate remedy for an adjudication tainted with an appointments violation is a new hearing," and "another ALJ . . . . must hold the new hearing." *See Lucia*, 138 S. Ct. at 2055.

---

[8] However, Plaintiff did not raise the Appointments Clause challenge for the first time in this Court.  On March 26, 2019 he raised the challenge to the Appeals Council.  (*Id*. at PageID.505).  Both the Appeals Council order of remand and ALJ Burnstein rejected the challenge.  (*Id*. at PageID.55, 161).

*Welsh,* at *5.  The instant case differs from *Welch* only in that ALJ Burnstein's appointment was ratified before the original September 25, 2018 determination. However, the ALJ held the April 24, 2018 administrative hearing and took evidence during the time that she was not constitutionally authorized to do so. Because this critical stage of Plaintiff's adjudication process occurred prior to the ratification, the reasoning in *Welsh* is equally applicable here.[9]

The Court has considered the out-of-circuit cases cited by the Commissioner reaching the opposite conclusion from *Welsh.*   *Camille B.,* at *3 (quoting *Zuniga v. Comm'r of Soc. Sec.,* 772 F. App'x 870, 871 (11th Cir. June 28, 2019) (per curiam) (Rejecting the Appointments Clause challenge to "a decision that was vacated on the merits" on basis that earlier determination by the same ALJ "'no legal effect'" and "'void.'"); *Govachini v. Comm'r of Soc. Sec.*, No. CV 19-1433, 2020 WL

---

[9]SSR 19-1p states that where "an ALJ's decision or dismissal is issued before July 16, 2018," claimant is entitled to "a new and independent review of the claims file" and either issue its own decision" or "remand the case to an ALJ other than the ALJ who issued the decision. . ." *Id.* at *3.  This seems to suggest that because ALJ Burnstein's issued her determination subsequent to her ratification, the remedy of a remand to a different ALJ is not available under SSR 19-1p.  However, SSR 19-1p begins by noting that in *Lucia,* the Supreme Court remedied the Appointments Clause violation by remanding the case "for a new hearing before a properly appointed ALJ *who had not previously heard the case*, or before the SEC itself."  *Id.* at *1 (emphasis added).  In the present case, the hearing was conducted long prior to the ratification; ALJ Burnstein therefore "heard" the case although her final decision issued after her ratification.  *Lucia* indicates that the adjudication of a case is not limited to issuing a determination, but the entire process of hearing and determination. "Judge Elliot has already both heard Lucia's case and issued an initial decision on the merits. He cannot be expected to consider the matter as though he had not adjudicated it before." *Id.,* 138 S. Ct. at 2055.  Even if the internal inconsistency in SSR 19-1p could be interpreted to allow a remand to another ALJ only where the final decision was issued before ratification, *Lucia* (upon which SSR 19-1p is based) holds that it is the process of adjudication, including the hearing, that requires the assignment of another ALJ.   Merriam-Webster defines adjudications as "the act or process of adjudicating a dispute." https://www.merriam-webster.com/dictionary/adjudication.  (Last visited June 12, 2022).

5653339, at *1 (W.D. Pa. Sept. 23, 2020) ("This case was not remanded back to the Commissioner by this Court until well after" the July 2018 ratification []. Accordingly, [the ALJ] was properly appointed during the entirety of the administrative adjudication of this case after the Court had overturned her earlier decision.").

Despite the absence of direction from this Circuit, the Court finds multiple reasons to adopt the reasoning set forth in *Welsh*.  First, *Lucia* acknowledges that an ALJ adjudicating the case prior to being properly appointed cannot be expected to later approach it with a "clean slate."  *Id.* at 2055.  Likewise, SSR 19-1p states that the remedy for an Appointments Clause violation is "a new and independent review of the claims file" by the Appeals Council "and either remand [of] the case to an ALJ *other than the ALJ who issued the decision* under review, or issue [of] its own new decision about the claim covering the period before the date of the ALJ's decision." *Id.* at *3 (emphasis added).   Again, in this case the ALJ prepared for and conducted the administrative hearing while she was not constitutionally appointed, in violation of the Appointments Clause.

Second, while the Commissioner states that the Appointments Clause violation has been "cured" by vacating the earlier determination on its merits, sending the case back to the same ALJ for further determination would presumably address the substantive errors identified by the Appeals Council, but would not allow for the remedy set forth in *Lucia*: a new hearing and determination by a

different ALJ.  According to the Commissioner's argument, the Appeals Council could circumvent this remedy by identifying substantive deficiencies and ordering a remand to the same ALJ.  Thus, a claimant whose original hearing and determination violates the Appointments Clause *and* was substantively deficient would get a lesser remedy than the one asking for a remand based only on the Appointments Clause violation.  The Court cannot endorse the lesser remedy proposed by the Commissioner.

Third, a strong argument can otherwise be made for remanding this case to a different ALJ.  In its two-page remand order, the Appeals Council noted that Dr. Poling's more recent records had been erroneously rejected for untimeliness and that Drs. Bray, Balunas, and Bhasker's findings of significant work-related psychological limitation had been wholly unaddressed.  (*Id*. at PageID.159-160). The second opinion discusses but rejects all those opinions except for Dr. Bray's finding of mild limitation in two categories.[10]  (*Id.* at PageID.143, 159-160). Although all of these sources found that Plaintiff experienced some significant degree of psychological limitation, the ALJ's newer determination remains the same, except for the finding of "mild" limitation in adapting or managing oneself rather than the previous finding of "no" limitation.  (*Id*. at PageID.60, 147).

---

[10] The ALJ adopted Dr. Bray's findings only as to his finding of mild limitation in the ability to understand, remember, and carry out tasks and interacting with others.  (*Id*. at PageID.619).  She rejected his finding of "mild to moderate" limitation in concentration, persistence, or pace and moderate limitation in the ability "to withstand stress and pressure associated with day-to-day work activities." (*Id*.).  The RFC in the older and newer determinations are identical.  (*Id*. at PageID.62, 148).

Notably, this minor alteration makes no difference in the final result; the RFC is wholly unchanged from the earlier determination.  (*Id*. at PageID.61-62, 148).  The RFC is identical to the one in the older determination, and the newer determination appears to have been drawn in significant part from the one tainted by the improper appointment.  This is exactly the result that *Lucia* and SSR 19-1p seek to avoid.  *Lucia,* 138 S.Ct. at 255 (citing *Ryder v. United States,* 515 U.S. 177, 183, 188 (1995)("This Court has also held that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official.").  Consistent with the Supreme Court's holding in *Ryder* and *Lucia,* a remand to the administrative level for hearing and determination by another ALJ is appropriate.

### Conclusion

For these reasons, I recommend **GRANTING** Plaintiff's motion for summary judgment, and remanding the case to the administrative level for hearing and determination in front of another ALJ, (ECF No. 11) and **DENYING** the Commissioner's motion (ECF No. 13).

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed.

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 16, 2022                          S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge